STATE OF NEBRASKA, APPELLEE, V. ELLEN J. SEXTON, APPELLANT.

482 N.W.2d 567

Filed April 10, 1992.    No. S-90-885.

J. Mark Barnett, of Jewell, Gatz, Collins, Dreier & Fitzgerald, for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

In appealing her jury conviction of theft by shoplifting, Ellen J. Sexton claims, in summary, (1) that the statute under which she was convicted is overbroad and unconstitutional as applied and (2) that the trial court erred in (a) admitting certain evidence, (b) failing to direct a verdict in Sexton's favor, and (c) failing to give a requested jury instruction.

We affirm Sexton's conviction in the district court for Douglas County.

In reviewing a criminal conviction, an appellate court does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence. Such matters are for the finder of fact, and the verdict must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. See *State v. Towler, ante* p. 103, 481 N.W.2d 151 (1992).

To convict Sexton, the State relied upon a combination of direct and circumstantial evidence. In criminal cases, circumstantial evidence is to be treated the same as direct evidence, and the State, upon review, is entitled to have all conflicting evidence, direct and circumstantial, and the reasonable inferences which can be drawn from the evidence viewed in its favor. See, *State v. Morley*, 239 Neb. 141, 474 N.W.2d 660 (1991); *State v. McCaslin, post* p. 482, 482 N.W.2d 558 (1992). Direct evidence is proof of facts by witnesses who saw acts done or heard words spoken. Circumstantial evidence is proof of collateral facts and circumstances from which the mind infers the conclusion that the fact sought to be established in fact existed. See *State v.*

*Loveless*, 234 Neb. 463, 451 N.W.2d 692 (1990).

Based upon the direct and circumstantial evidence and the reasonable inferences to be drawn therefrom, the following facts could be determined by a jury.

Kathryn Hearn, an Omaha police officer, worked part time as a security officer at Dillard's department store at the Crossroads Mall in Omaha. At approximately 7:30 p.m. on December 30, 1989, Hearn was on duty at Dillard's as a security agent in plain clothes when her attention was attracted to two women in the Clubhouse area of the store, located on the second floor. At the time, the second floor was devoted to the sale of women's clothing. In the center of the floor there was an escalator. Directly ahead of the escalator were exit doors leading to the fourth level of a parking garage. There was a passenger elevator inside the store to the right of the exit doors. The Clubhouse area was to the left of the escalator. One of the two women who attracted Hearn's attention was identified at trial as the defendant, Sexton. Hearn watched as the two women scanned the store. They appeared to be looking at people rather than at merchandise. Hearn observed Sexton pick up two sweaters and several items of leather clothing. Carrying the items she had picked up, Sexton walked to a dividing wall and bent down out of Hearn's sight while the second woman remained standing. When Sexton stood up, she was no longer holding the items of clothing she had been carrying. Thereafter, both women continued to walk around the same area of the store. Hearn watched the second woman pick up items of clothing and carry them to the area by the dividing wall. While Sexton remained standing, the second woman disappeared behind a rack. When Sexton's companion reappeared, she was no longer carrying the clothes she had picked up earlier. Later, when Hearn checked the second floor and the racks in the area by the dividing wall, she could not find any articles of clothing like those she had seen the women carry.

At trial, Hearn was able to identify 10 women's garments the two women had removed from the store's clothing racks and placed in a large Younkers department store sack, which they later concealed. Circumstantial evidence reflects that the women also placed an additional 10 garments in the same sack.

Subsequently, without paying for the garments, Sexton dragged the sack containing the garments from the confines of the store to a vestibule located between two sets of doors leading to the fourth level of a parking garage. There is evidence from which the jury could conclude that when they thought they were being watched, the women returned the sack containing the garments to within the Dillard's store, boarded an elevator, and concealed the sack in the linen and bedding department on the third floor of the store for later retrieval.

A store employee reported riding in the elevator to the third floor of the store with Sexton and another woman. The employee testified that Sexton and her companion went to the back wall in the linen and bedding department. The employee did not recall if the women had any parcels or a sack with them. A short time later, Hearn, who had remained on the second floor, saw Sexton and her companion, whom she had been watching earlier, get off the elevator and leave the store. The women no longer had the sack with them.

After Sexton and her companion left the third floor, Cindy Johnston, another Omaha police officer and Dillard's security agent, searched the third-floor linen and bedding department. Stuffed behind a curtain and some pillows, she found a very heavy plastic Younkers sack filled with women's clothing. Johnston and Hearn took the sack to the store's executive offices, where they inventoried the contents. Thereafter, the sack and its contents were locked in a storage room.

At trial, over objections regarding foundation and chain of custody, Hearn identified 20 items of women's clothing as being items she and Officer Johnston removed from the Younkers sack and inventoried on December 30, 1989. Hearn testified that each item was in the same condition at the time of trial as it was when it was inventoried. Each item inventoried carried a tag setting forth the price for which Dillard's would sell the item. There was testimony that customers paid Dillard's the prices listed on its price tags.

At the conclusion of the State's evidence, Sexton moved to dismiss the case against her on the ground that the statute under which she was charged is unconstitutionally overbroad and violates due process. The defendant's dismissal motion as well

as her motion for a directed verdict was overruled. The defendant did not present any evidence, and she was found guilty by the jury of shoplifting merchandise valued at $2,454.06. She was sentenced to prison for 1 year and 1 day.

In her first assignment of error, Sexton claims that Neb. Rev. Stat. § 28-511.01 (Reissue 1989), under which she was prosecuted, is unconstitutionally overbroad.

One claiming that a statute is unconstitutional has the burden to show that the questioned statute is unconstitutional. A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. *State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 477 N.W.2d 577 (1991). An attack based on the overbreadth of a statute asserts that the questioned language impermissibly infringes upon some constitutionally protected right. *State v. Two IGT Video Poker Games*, 237 Neb. 145, 465 N.W.2d 453 (1991). A statute may be overbroad only if its overbreadth is substantial, that is, when the statute would be unconstitutional in a substantial portion of the situations to which it is applicable. *Id*.

As relevant here, § 28-511.01 reads:

(1) A person commits the crime of theft by shoplifting when he or she, *with the intent of appropriating merchandise to his or her own use without paying for the same* or *to deprive the owner of possession of such property or its retail value*, in whole or in part, does any of the following:

(a) *Conceals or takes possession of the goods* or merchandise of any store or retail establishment;

. . . .

(c) *Transfers the goods* or merchandise of any store or retail establishment *from one container to another*.

(Emphasis supplied.)

The defendant contends that § 28-511.01 applies equally to lawful and unlawful conduct in that it fails to set forth the requisite criminal intent. Sexton argues that any time a shopper takes possession of an item and it is somehow concealed from view, the shopper has violated the statute. That argument overlooks the portion of the statute that clearly provides that the concealment must be "*with the intent of appropriating*

*merchandise to his or her own use without paying for the same.*" Sexton's first assignment of error is patently frivolous and requires no further discussion.

Secondly, Sexton claims that the trial judge erred when he overruled her objections to the introduction of the items of clothing which the State charged were shoplifted by her. She complains that the State did not establish a complete chain of custody tracing the possession of the items to the final custodian.

Such a showing is not necessary. Officer Hearn testified that the items that were introduced in evidence were the same items and were in the same condition as when they were taken from the Younkers sack on December 30, 1989. An exhibit is admissible, so far as identity is concerned, when it has been identified as being the same object about which the testimony was given. It must also be shown to the satisfaction of the trial court that no substantial change has taken place in the exhibit so as to render it misleading. As long as the article can be identified, it is immaterial in how many or in whose hands it has been. *State v. Kosmicki*, 239 Neb. 358, 476 N.W.2d 550 (1991). The prosecution laid sufficient foundation for the clothing to be introduced into evidence. Sexton's assignment of error is meritless.

Thirdly, Sexton claims that there was insufficient evidence regarding the value of the items the State charged her with shoplifting. The value of property stolen is not an element of the crime of theft, but it is important only in determining the penalty. See *State v. Weaver*, 237 Neb. 185, 465 N.W.2d 470 (1991). As relevant here, theft of property having a value of more than $1,000 is a Class III felony and is punishable by not less than 1 nor more than 20 years' imprisonment, up to a $25,000 fine, or both. Neb. Rev. Stat. §§ 28-518 and 28-105(1) (Reissue 1989). The value of articles stolen from a stock of merchandise may be established by proof of the price at which they and other like articles are being offered and sold at the place where the articles were stolen. *Robinson v. State*, 107 Neb. 591, 186 N.W. 977 (1922).

Officer Hearn testified that each item contained in the Younkers sack Sexton was seen dragging toward the parking

garage had a tag. reflecting the price for which the item was being bought and sold at Dillard's on December 30, 1989. The determination of the value of property stolen, upon a conviction of theft, is a question of fact to be determined by the jury. *State v. Weaver, supra.* From all of the facts and circumstances of this case, the jury could conclude beyond a reasonable doubt that the items they found Sexton had shoplifted had a value in excess of $1,000.

Defendant's fourth assignment of error complains that the evidence was insufficient to sustain a conviction and that the trial judge erred in failing to sustain her motion for a directed verdict.

On a criminal defendant's motion to dismiss for insufficient evidence, the State is entitled to have all its relevant evidence accepted as true, the benefit of every inference reasonably drawn from the evidence, and every controverted fact resolved in its favor. *State v. McCaslin, post* p. 482, 482 N.W.2d 558 (1992). On a claim of insufficiency of the evidence, a guilty verdict will not be set aside in a criminal case where such verdict is supported by relevant evidence. Only where the evidence lacks sufficient probative force as a matter of law may a guilty verdict be set aside as unsupported by evidence beyond a reasonable doubt. *State v. Alcorn, ante* p. 400, 481 N.W.2d 921 (1992).

In this case, the probative evidence was more than sufficient for a jury to find beyond a reasonable doubt that the defendant was guilty of shoplifting. Based upon the direct and circumstantial evidence and the inferences that could be drawn from the evidence that the defendant furtively moved about Dillard's department store, that she took women's clothing bearing price tags off the rack and placed them in a sack from a different department store, that she filled or assisted in filling the sack with items of women's clothing belonging to Dillard's to such a capacity that it could only be dragged across the floor, that she dragged the sack through one set of the store's exit doors and back again, and that she took the sack to a department on another floor and concealed it behind a curtain and pillows, a jury could, without question, find beyond a reasonable doubt that Sexton violated Nebraska's shoplifting

statute, § 28-511.01, by concealing or taking into her possession women's apparel belonging to Dillard's with the intent of appropriating the apparel to her own use without paying for the same.

Defendant's final assignment of error claims that the trial judge incorrectly instructed the jury. The contested instruction is not contained in the record. We are, therefore, unable to review the appropriateness of the instruction. See *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992).

The evidence being sufficient to convict Sexton of theft and the trial court having committed no error, Sexton's conviction must be affirmed.

AFFIRMED.