STATE OF NEBRASKA, APPELLEE, V. ANTHONY J. RUIZ, APPELLANT.
489 N.W.2d 865

Filed October 9, 1992. No. S-91-744.

Thomas M. Kenney, Douglas County Public Defender, and Cheryl M. Kessell for appellant.

Don Stenberg, Attorney General, and J. Kirk Brown for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

Following a trial to a jury, the defendant, Anthony J. Ruiz, was convicted of burglary and sentenced to 3 years' probation, including 180 days in jail. In his appeal to this court, the defendant contends that the evidence was insufficient to support the conviction.

The record shows that on the evening of January 1, 1991, Kathy Williams and Jim Jensen were watching a football game in their apartment at 7313 Decatur Avenue in Omaha, Nebraska, with their friends Wes Schweigart and Christine Miller. Schweigart and Miller left at about 10:30 p.m.

Schweigart testified that as they left the apartment, he heard a hitting sound and looked over at the True Value hardware store. He saw a person kick in the south door and then enter the store. Schweigart described the person as wearing a dark jacket with something covering his head. Miller described the person as a male wearing a dark coat and a hat.

Schweigart and Miller returned to the apartment and told Williams to call 911 to report a burglary. Miller, Jensen, and Schweigart then went to the kitchen window of the apartment, where Jensen could see an older, big, dark-colored car parked in front of the store. The burglar got in the car and drove onto 73d Street, but did not turn on its headlights. After that, the three observers lost sight of the car.

About 5 to 7 minutes after Williams called 911, she left the building with the other three people and observed a man getting into a car in the apartment parking lot. The car was parked in an east-west direction behind cars that were parked in stalls in a north-south direction. The man then drove the car very slowly with its lights off and parked it behind the True Value store.

Williams described the car as an older blue car with a black top. Miller testified that the outline of the car was the same as the outline of the car she had seen leaving the True Value parking lot after the burglary.

Schweigart also observed the car drive by very slowly and park in the True Value parking lot. According to Schweigart, the headlights were on when the car drove by and parked in the lot.

Jensen testified that he too saw a car pull up close to them, drive slowly to the True Value store, and park. He testified that the car was similar to the car that he had seen parked in front of the store at the time of the burglary; however, Jensen told the police that the car involved in the burglary had two doors, while the defendant's car had four doors.

After Officer Robert Steele heard the report on the police radio concerning the burglary, he drove to the back of the True Value store in the event someone might be flushed out of the store. He found an Oldsmobile Cutlass automobile parked behind the store with the defendant sitting in it.

The defendant was then handcuffed, and he and his car were searched; however, nothing was found in the search. The defendant told the officer that he was coming from a friend's house where he had been watching football. He had developed car trouble, so he parked the car at the True Value store.

Officer Steele noticed that in the light, the defendant's jacket appeared to sparkle. He did not know whether the sparkling was caused by glass fragments.

The owner of the True Value store, who was called to the store, testified that two guns valued at approximately $800 each were missing from his store.

The glass in both the outside doors and the inside doors had been smashed. The broken glass was swept up and placed into a Dumpster in front of the store. The glass from the store's outer

doors was safety glass.

The defendant, when arrested, was wearing a leather jacket and a cap. Three of four glass fragments that were brushed out of his jacket and analyzed were found to be similar to the glass that had been in the doors at the store. However, the analyst was unable to say whether the glass fragments that were analyzed came from the glass at the True Value store.

The defendant testified that prior to going to the home of his friend Michael Stephenson at about 9 p.m. to watch football, he had picked up a battery charger. His car's battery was weak, and he intended to charge the battery that night. He left Stephenson's apartment at around 10:40 p.m.

At Stephenson's apartment, the defendant parked his car, an older model Oldsmobile Cutlass, behind Stephenson's car and Stephenson's grandmother's car. When he was ready to leave, the defendant got in his car and let it idle a few minutes before turning the lights on. He left the apartment parking lot very slowly and passed a group of people. He noticed them because it was very cold that evening and some of them were not wearing coats.

Because the car was hesitating, the defendant proceeded slowly to the True Value parking lot and stopped the car. He chose that particular location because there was a slope to the parking lot, and he wanted the car to face downhill to avoid stalling it. Also, there was more light when the car was facing south, and he anticipated that he would have to work on the car to get it in condition to take him home.

The defendant and his fiancee testified that he worked on his car almost every day and that in the winter he wore his jacket all the time. To fix the car, he would often lie down in the parking lot, in which was found various types of debris, including glass.

Pallas Hoffmann and Stephenson testified that Stephenson lived in apartment No. 4 of the Contemporary Apartments complex at 7319 Decatur Street, which was across from Williams and Jensen's apartment. Both Stephenson and Hoffmann testified that on January 1, 1991, the defendant was at Stephenson's apartment and watched a football game on television. Hoffmann recalled that the defendant left at approximately 10:40 p.m. Both Hoffmann and Stephenson

testified that the defendant came in and left the apartment only once that evening.

Stephenson admitted that later in the evening of January 1, police officers had come and questioned him regarding the defendant's whereabouts and Stephenson's lying to them when he said that the defendant had not been there that evening. Stephenson said that he lied to the police because he was concerned that the defendant was in some trouble that Stephenson knew nothing about and with which he did not want to get involved.

After Stephenson found out the details of the allegations against the defendant, both he and his grandmother, Opal Scott, went to the police station in the early hours of the morning and gave a written statement to the police saying that the defendant had been at Stephenson's apartment at the time he testified he was.

Scott testified that she lived across the hallway in the same building as her grandson Michael Stephenson and that she would park her car in space No. 3 and he would park his car in space No. 4 in the apartment parking lot. It was customary for the defendant to park his car behind the cars in those spaces when he was visiting Stephenson's apartment.

Scott testified that she first saw the defendant's car around 9 o'clock in the evening. She noticed that its lights were not on and that there was no exhaust coming from the tailpipe. She heard the defendant say goodbye to her grandson and saw the defendant in the parking lot when he left at about 10:40 p.m. The defendant got into his car and drove very slowly toward the True Value parking lot.

"A person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value." Neb. Rev. Stat. § 28-507(1) (Reissue 1989).

The evidence which the State introduced was clearly sufficient to establish that a burglary occurred. However, the evidence was not sufficient to identify the defendant as the burglar.

The evidence the State presented was entirely circumstantial.

A conviction may rest on circumstantial evidence if the evidence is substantial. *State v. Clark*, 236 Neb. 475, 461 N.W.2d 576 (1990). "[I]n determining the sufficiency of circumstantial evidence to support a conviction, ' "[a]ny fact or circumstance reasonably susceptible of two interpretations must be resolved most favorably to the accused." ' " *State v. Dawson*, 240 Neb. 89, 96, 480 N.W.2d 700, 704 (1992).

So far as the record shows, the stolen guns were never recovered. The defendant and his car were searched, and no weapons or burglary tools were found. The one fingerprint obtained from the True Value store did not match the defendant's fingerprints.

In this case, no witness could identify the defendant as the person they saw breaking into the True Value store. No witness was able to describe the model of the perpetrator's car, and one witness recalled telling the police that the car parked in front of the True Value store during the burglary had only two doors. The defendant's automobile had four doors.

Several of the facts which support the defendant's theory of the case were provided by the State's witnesses and are uncontroverted.

The State's witnesses testified that the defendant's car was driven very slowly; however, none of the State's witnesses testified that the burglar drove his car slowly when leaving the True Value store.

The State's witness who observed the defendant's car parked behind the two other cars acknowledged that the two cars were parked in parking spaces which belonged to the apartments in which the defendant's friends lived.

The defendant was seen driving out of the apartment parking lot after the burglary, but even though they had an unimpeded view, none of the witnesses testified that they saw the defendant drive into the parking lot of the apartment building after the burglary.

A conviction cannot be based upon suspicion, speculation, the weakness of the status of the accused, the embarrassing position in which he finds himself, or the mere fact that some unfavorable circumstances are not satisfactorily explained. *State v. Jansen*, 241 Neb. 201, 486 N.W.2d 501 (1992). See, also,

*State v. Dawson, supra.*

The evidence of the State was inadequate to establish that the defendant was the person who entered the True Value store and committed the burglary. At best, the State's evidence placed the defendant in the vicinity of the True Value store at about the time the burglary occurred. The State's evidence was insufficient to overcome the presumption of innocence accorded the defendant, and it does not support a finding of guilt beyond a reasonable doubt. See *State v. Dawson, supra.*

The judgment is reversed, and the cause is remanded with directions to dismiss the information.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.