STATE OF NEBRASKA, APPELLEE, V. TODD SKALBERG, APPELLANT.

526 N.W.2d 67

Filed January 6, 1995.   No. S-93-592.

David A. Domina and Denise E. Frost, of Domina & Copple, P.C., for appellant.

Don Stenberg, Attorney General, and Delores Coe-Barbee for appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ., and BOSLAUGH, J., Retired.

WRIGHT, J.

We granted the State's petition for further review of the decision of the Nebraska Court of Appeals which reversed the judgment of the Knox County District Court and remanded the

cause to the district court with directions that the case against Todd Skalberg be dismissed because the circumstantial evidence presented was insufficient to prove Skalberg's guilt beyond a reasonable doubt.

## SCOPE OF REVIEW

Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *State v. Roche, Inc.*, 246 Neb. 568, 520 N.W.2d 539 (1994); *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993); *State v. Quandt*, 234 Neb. 402, 451 N.W.2d 272 (1990).

A reasonable inference from circumstantial evidence is to be taken most favorably to the accused when circumstantial evidence is the only basis upon which to support a conviction and the circumstantial evidence is reasonably susceptible of two interpretations, one of guilt and the other of nonguilt, and neither inference is stronger than the other. See, *State v. Dean*, 246 Neb. 869, 523 N.W.2d 681 (1994); *State v. Mowry*, 245 Neb. 213, 512 N.W.2d 140 (1994); *State v. Covarrubias*, 244 Neb. 366, 507 N.W.2d 248 (1993).

## FACTS

Skalberg was charged with five counts of burglary, in violation of Neb. Rev. Stat. § 28-507 (Reissue 1989). At trial, Skalberg moved for a dismissal of all counts. Skalberg's motion was sustained regarding count V, but he was found guilty of committing burglaries at Kersten Auto, Pizza Kitchen, Curt's Lanes (a bowling alley), and Bloomfield Automotive (a NAPA auto parts store). All of these businesses are located within a one-block area in Bloomfield, Nebraska.

The events leading up to the investigation of the burglaries began at about 11:30 p.m. on September 23, 1992, when Bloomfield police chief Palmer Haugen went to McHenry's Saloon and talked with Skalberg and Todd Edwards about a report that a truck had been vandalized. Skalberg and Edwards denied involvement in the incident, and they subsequently left the bar within minutes of each other at approximately 12:45 a.m.

At about 1:10 a.m., as Haugen was making rounds, he found

a chair lying on the sidewalk outside Kersten Auto. Upon further investigation, he saw a person inside the building. The person disappeared when Haugen yelled, "What the hell are you doing in there?" Haugen did not see the person's face, but he described the person as being approximately 5 feet 10 inches tall and very thin and wearing dark-colored pants and a dark long-sleeved top.

Haugen called for additional help, and Deputy Sheriff James Janecek arrived at about 2:12 a.m. The two officers entered Kersten Auto and found that the interior of the building had been ransacked. Pieces of a Mr. Goodbar candy bar and part of its wrapper were found on a desk. Tow chains were missing from Kersten Auto's tow truck, which was parked in the alley behind the store. While investigating the scene of the Kersten Auto burglary, Haugen gave Janecek a description of the person he had seen inside the building.

At Pizza Kitchen, the back door was found open, and the glass in the front door and the door itself were broken. The premises had been ransacked, and approximately $200 was taken from the cash register, which had been smashed on the floor.

At Curt's Lanes, the glass was broken out of the front door, and the screen in the back door had been cut. The business had been ransacked. The freezer and beer cooler had been opened, and the cigarette and candy display had been rummaged through. Some candy was missing, including a Mr. Goodbar candy bar. The cash register had been removed from the building and was found outside. Curtis Strom, proprietor of Curt's Lanes, testified he found broken glass, candy bars, pop, mini-burritos, and beer cartons scattered outside the building. He said some Marlboro cigarettes that had been on display were missing, and he thought two cartons of cigarettes also were missing. Strom was not certain whether any beer was missing.

At Bloomfield Automotive, the front and back doors and front windows were broken. Drawers had been ransacked, and items taken from the store were spread out in an area in front of the store. Tools had been piled on the floor, and items had been ripped down from shelves. The cash register was open, and keys had been removed from it.

During the course of their investigation, Haugen and Janecek received a report that someone was hiding in the bushes by the library. Haugen saw a person wearing dark clothing, which included a dark long-sleeved top, running from the library. The person appeared to be the same size as the one who was seen inside Kersten Auto. The officers were not able to locate the person. Janecek then had the dispatcher contact the fire department for assistance.

At approximately 2:30 a.m., Janecek saw a person on foot about two blocks from Kersten Auto. Janecek then began pursuing a car he saw speeding down Main Street. The driver lost control of the car, was involved in a collision, and fled the scene on foot. Janecek was later able to identify the driver as Edwards. The car Edwards was driving had been stolen from a residence in Bloomfield. At that point, Janecek advised the fire department to be on the lookout for two people because Edwards did not match the description of the person seen inside Kersten Auto.

Janecek had no contact with any other suspects until a member of the fire department informed him that a car was parked on a county road north and east of Bloomfield. The vehicle's engine was running, but its headlights were off. Janecek proceeded to the vehicle and found Edwards in the driver's seat and Skalberg in the passenger's seat, both either asleep or passed out. Skalberg and Edwards were arrested, and the car was impounded and searched. The tow chains taken from Kersten Auto were found in the backseat. Cigarettes and two cans of Budweiser beer were also found in the car.

At the time of the arrest, Skalberg had $6.72 and a pack of Marlboro cigarettes in his pockets. He was wearing blue jeans and a gray shirt over a dark-blue or black thermal-underwear-type shirt. Edwards had $348 "wadded up" in his pocket, along with part of a Mr. Goodbar candy bar. He was wearing blue jeans, a white sweatshirt with blue three-quarter-length or long sleeves, and a medium-blue or turquoise T-shirt with "Service Master" written on the front. He was described as being 5 feet 10 inches tall and weighing about 200 pounds.

At trial, Skalberg testified that he had moved to Yankton, South Dakota, 2 days before the burglaries and that he had lived

with Scott Wilson in Bloomfield prior to that time. Skalberg and Edwards had visited Skalberg's parents in Wausa, Nebraska, during the evening prior to the burglaries. When they left, Skalberg's mother gave him a $10 bill, a box of meat, and a pack of Marlboro cigarettes. Later in the evening, Skalberg and Edwards went to McHenry's Saloon in Bloomfield. Shortly after closing time, Skalberg started his car and headed toward Standpipe Hill.

Skalberg testified that as he went down the street west of the bowling alley, he saw Edwards standing by the front door of the bowling alley. When Skalberg asked Edwards what he was doing, Edwards told him to "get the fuck out of here." Edwards then ran through the alley between Bloomfield Automotive and the rear of Pizza Kitchen. Skalberg followed in his car and saw Edwards' feet hanging out of a window in the Kersten Auto building. Skalberg testified that he parked his car and went to the door. When Edwards opened the door, Skalberg asked what he was doing. Edwards replied, "Hey, mother fucker, I own this town and don't fuck with me . . . ." Skalberg testified that he wanted to avoid a confrontation with Edwards, so Skalberg got in his car and drove away. Skalberg said he parked his car in the driveway of Wilson's home because he was tired and did not think he could drive to Yankton without falling asleep. After Skalberg pulled into the driveway, he took his keys out of the ignition, threw them on the floor, moved to the passenger's seat, and went to sleep. When Skalberg woke up, he was in the country, Edwards was in the driver's seat, and they were being arrested.

Wilson testified that he had seen Skalberg's car in the driveway when he got up to go to the bathroom during the night of the burglaries. Wilson was not curious about the car because Skalberg had only recently moved out and because Wilson had seen the car sitting there many times before when Skalberg came home at night. On those occasions, the radio would be playing and Skalberg would be in the car. This occurred as often as twice a week. Another witness testified that he had previously seen Skalberg sleeping in his car on more than one occasion.

The trial court found that the elements of burglary had been

proven in each of the four counts. The court believed that the evidence pointed to Skalberg as having been the "wheelman" driving the getaway car. The court found that Skalberg's memory was conveniently lapsing at times, but on the other hand did not lapse when he testified that he was standing at the doorway of Kersten Auto asking Edwards what he was doing there. The court stated:

> He wasn't all the way in but he wasn't all the way out. It doesn't square with the rest of the evidence. A skinny man seen running from the scene at Kersten's. I think the skinny man was the defendant. The loot was found in his car and on his co-purpetrator [sic], if you will, and I think they just simply didn't have time to split it up.

On appeal, Skalberg assigned as error the trial court's finding that the evidence was sufficient to sustain his convictions. The Court of Appeals found that the evidence supporting Skalberg's convictions was entirely circumstantial, that there was no direct evidence linking Skalberg to the burglaries, and that the circumstantial evidence was insufficient to sustain the convictions.

## ASSIGNMENTS OF ERROR

The State, in its petition for further review, asserts that review is necessary to resolve the following questions: (1) whether the Court of Appeals has announced a rule of law which infringes on the role of the fact finder in making its determination that the inference of nonguilt was as strong as the inference of guilt and (2) whether the Court of Appeals erred in finding that the inference of nonguilt was as strong as the inference of guilt under the facts of the case.

## ANALYSIS

In this case, all the evidence is circumstantial. When circumstantial evidence is the only basis upon which to support a conviction, the trial court must first determine whether the circumstantial evidence is reasonably susceptible of two interpretations, one of guilt and the other of nonguilt, and whether the inference of guilt is stronger than the inference of nonguilt. This is determined by the trial court in either a bench trial or a jury trial. This is a question of law which must be

determined by the trial court prior to submitting the evidence to the trier of fact. See, *State v. Dean*, 246 Neb. 869, 523 N.W.2d 681 (1994); *State v. Covarrubias*, 244 Neb. 366, 507 N.W.2d 248 (1993).

In *Covarrubias*, 244 Neb. at 374, 507 N.W.2d at 253, we explained our earlier holding in *State v. LaFreniere*, 240 Neb. 258, 481 N.W.2d 412 (1992):

> *LaFreniere* holds that in determining the sufficiency of circumstantial evidence to support a conviction, any fact or circumstance reasonably susceptible of two interpretations must be resolved most favorably to the accused. *LaFreniere* requires a reasonable inference from circumstantial evidence to be taken most favorably to the accused when circumstantial evidence is the only basis upon which to support a conviction and the circumstantial evidence is reasonably susceptible of two interpretations, one of guilt and the other of nonguilt, and neither inference is stronger than the other. See, also, *State v. Ruiz*, 241 Neb. 693, 489 N.W.2d 865 (1992); *State v. Dawson*, 240 Neb. 89, 480 N.W.2d 700 (1992).

If the inference of nonguilt is stronger than or equal to the inference of guilt, then the case should not be submitted to the trier of fact; the trial court having thus determined as a matter of law that the evidence is insufficient to sustain a finding of guilt. On the other hand, if the trial court determines that the inference of guilt is stronger than the inference of nonguilt and determines that the evidence is sufficient to sustain a conviction, then the court submits the evidence to the trier of fact for a determination of the guilt or innocence of the defendant.

On appeal, the appellate court must first independently decide as a matter of law whether the circumstantial evidence is reasonably susceptible of two interpretations and whether the inference of nonguilt is stronger than or equal to the inference of guilt. Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *State v. Roche, Inc.*, 246 Neb. 568, 520 N.W.2d 539 (1994). If the appellate court determines that the evidence was properly submitted to the trier of fact,

then on appeal the State is entitled to have all conflicting evidence and the reasonable inferences which can be drawn from the evidence viewed in its favor. See, *State v. Covarrubias, supra*; *State v. Sexton*, 240 Neb. 466, 482 N.W.2d 567 (1992).

The Court of Appeals held that the evidence must be viewed most favorably to Skalberg, "unless we can say that the inference of guilt is stronger than the inference of innocence assuming that the evidence is reasonably susceptible of two interpretations, one of guilt and one of innocence." *State v. Skalberg*, 94 NCA No. 11 at 15-16, case No. A-93-592 (not designated for permanent publication). We review this question of law to independently determine whether the inference of guilt was stronger than the inference of innocence.

Under the burglary statute, Skalberg could be found guilty only if the evidence showed that he "willfully, maliciously, and forcibly" broke into and entered "any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value." See § 28-507. The Court of Appeals found that the State had not proven Skalberg's guilt beyond a reasonable doubt, but had merely proven that several burglaries were committed in Bloomfield on September 24, 1992.

Skalberg testified he parked his car in the driveway of Wilson's home and fell asleep. The police chief could not identify Skalberg as the person he saw inside Kersten Auto, but could only report that the person was wearing dark clothing. Skalberg was wearing a gray shirt over a dark-blue or black shirt, which is not necessarily dark clothing as described by the police chief. The Court of Appeals found that the evidence of the physical description provided no inference of guilt which was stronger than an inference of innocence, particularly when the police chief, who knew Skalberg, could not say that Skalberg was the person that he saw inside Kersten Auto on the night of the burglaries.

The presence of the tow chains in Skalberg's car did not establish that Skalberg had been inside Kersten Auto. Testimony received from an employee of Kersten Auto established that the company tow truck was parked in the alley behind the store on the night of the burglaries. As noted by the Court of Appeals,

"The only allowable inference from finding them in Skalberg's car is that he or Edwards had stolen them, but the evidence is uncontroverted that to steal the chains, no burglary was required." *State v. Skalberg*, 94 NCA No. 11 at 18. There was no evidence of any forcible breaking or entering of real estate or improvements erected thereon in order to steal the tow chains.

No evidence established that the beer found in the car or the money and cigarettes found on Skalberg were taken in the burglaries. Skalberg testified that he purchased the beer in Yankton and that the cigarettes were given to him by his mother. No identifiable fingerprints were found at any of the crime scenes, and a palm print found at one of the locations did not match Skalberg's palm print.

As to the State's first contention, that the Court of Appeals has announced a rule of law which infringes on the fact finder, we find that the determination by the Court of Appeals regarding the inferences presented by the circumstantial evidence does not infringe on the role of the fact finder. The determination of the inferences from the circumstantial evidence is a question of law to be decided by the trial court before the evidence is submitted to the fact finder. It is a determination of whether the evidence is sufficient to sustain a conviction for the offense with which the defendant has been charged. Such a determination is made as a matter of law and does not infringe upon the trier of fact's determination of guilt or innocence.

The State's second contention is that the Court of Appeals erred in finding that the inference of nonguilt was as strong as the inference of guilt. We view this determination as a matter of law and make our own determination independent from that of the Court of Appeals and that of the trial court. See *State v. Roche, Inc.*, 246 Neb. 568, 520 N.W.2d 539 (1994). Although the trial court could properly conclude that four burglaries had been committed, the State has not shown that the circumstantial evidence establishes beyond a reasonable doubt that Skalberg committed the burglaries. Our review of the circumstantial evidence leads us to the conclusion that the inference of nonguilt was as strong as the inference of guilt. The circumstantial evidence, taken in favor of Skalberg, was not

sufficient to overcome the presumption of innocence and did not support a finding of guilt beyond a reasonable doubt.

Therefore, we affirm the judgment of the Court of Appeals, which reversed the district court's judgment and remanded the cause with directions to dismiss.

AFFIRMED.

FAHRNBRUCH, J., concurs in the result.

LANPHIER, J., concurring.

I concur with the majority's holding that the evidence adduced was insufficient to support a guilty verdict. However, I write separately because I do not believe, as the majority concludes, that the inference of guilt was as strong as the inference of nonguilt. Additionally, the majority's adoption of new rules concerning when a trial court should not submit a case to the trier of fact is unnecessary and conflicts with our existing standard for directed verdicts.

The majority correctly concludes that all the evidence against Skalberg was circumstantial. However, the scope of review used by the majority to determine whether the evidence against Skalberg was sufficient to sustain his convictions was the wrong one.

Generally, when a criminal conviction on a claim of insufficiency of evidence is reviewed, circumstantial evidence is to be treated the same as direct evidence; and the State, upon review, is entitled to have all conflicting evidence, direct and circumstantial, and the reasonable inferences drawn from the evidence viewed in its favor. *State v. Phelps*, 241 Neb. 707, 490 N.W.2d 676 (1992); *State v. Sexton*, 240 Neb. 466, 482 N.W.2d 567 (1992); *State v. Morley*, 239 Neb. 141, 474 N.W.2d 660 (1991). See, *State v. Saltzman*, 235 Neb. 964, 458 N.W.2d 239 (1990); *State v. Nesbitt*, 226 Neb. 32, 409 N.W.2d 314 (1987); *State v. Buchanan*, 210 Neb. 20, 312 N.W.2d 684 (1981). However, circumstantial evidence is to be taken most favorably to the accused when circumstantial evidence is the only basis upon which to support a conviction and the circumstantial evidence is reasonably susceptible of two interpretations, one of guilt and the other of nonguilt, *and neither inference is stronger than the other*. *State v. Mowry*, 245 Neb. 213, 512 N.W.2d 140

(1994); *State v. Covarrubias*, 244 Neb. 366, 507 N.W.2d 248 (1993); *State v. Ruiz*, 241 Neb. 693, 489 N.W.2d 865 (1992); *State v. LaFreniere*, 240 Neb. 258, 481 N.W.2d 412 (1992); *State v. Dawson*, 240 Neb. 89, 480 N.W.2d 700 (1992); *State v. Earlywine*, 191 Neb. 533, 215 N.W.2d 895 (1974); *State v. Faircloth*, 181 Neb. 333, 148 N.W.2d 187 (1967); *Reyes v. State*, 151 Neb. 636, 38 N.W.2d 539 (1949).

The majority, concluding that the inference of nonguilt was as strong as the inference of guilt, applies this second scope of review. However, I disagree with this conclusion. Even if the State is given the benefit of all reasonable inferences, the evidence adduced was insufficient to support a guilty verdict. From the evidence adduced, the most that can be reasonably inferred to support Skalberg's guilt is that burglaries were committed, that Skalberg knew the burglaries had been committed by Edwards, and that after the burglaries Skalberg was found with Edwards and some stolen items. These reasonable inferences do not prove that Skalberg committed burglary—that he willfully, maliciously, and forcibly broke into and entered any real estate or improvements erected thereon with intent to commit any felony or with intent to steal property of any value. The inference of guilt was not nearly as strong as the inference of nonguilt.

Since the inferences of guilt and nonguilt are not equally as strong, this court should have reviewed the evidence under the general standard of review. *Mowry, supra*. Under the general standard of review, the evidence is insufficient to sustain a verdict of guilt.

In addition to applying the wrong scope of review, the majority has, without explanation or precedent, set a new standard for when a case should not be submitted to the trier of fact. The majority requires a trial court in either a bench or a jury trial to determine whether "circumstantial evidence is reasonably susceptible of two interpretations . . . ." Once this determination has been made, the majority requires the trial court to determine whether the inference of guilt is stronger than or equal to the inference of nonguilt. The majority opinion then provides that if the trial court determines the inference of nonguilt is stronger than or equal to the inference of guilt, then

the case should not be submitted to the trier of fact.

The majority does not explain when the trial court is supposed to make this determination. The majority does not say if a defendant must make a motion in order for the trial court to make such a determination, and the majority has not explained what type of motion must be made, if a motion is necessary. The majority opinion merely states that the determination must be made.

The determination of a trial court to not submit a case to the trier of fact is effectively a ruling on a motion for a directed verdict. However, we already have standards for when a trial court should direct a verdict. In a criminal case, a trial court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking in probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Hirsch*, 245 Neb. 31, 511 N.W.2d 69 (1994). That is to say, a directed verdict is proper only when reasonable minds cannot differ and can draw but one conclusion from the evidence, where an issue should be decided as a matter of law. *Id.*

The majority's new rule instructing a trial court to not submit a case to the trier of fact although reasonable minds differ is contrary to our longstanding rule for directed verdicts. As just stated, directed verdicts are only proper where reasonable minds *cannot* differ. However, the majority requires a trial court to not submit a case to the trier of fact in instances where "circumstantial evidence is reasonably susceptible of two interpretations . . . ." If evidence is reasonably susceptible to two interpretations, then it follows that reasonable minds may differ. The majority, therefore, requires trial courts to take action equivalent to directing a verdict although reasonable minds differ. The majority makes this change without reference to our prior standard or to the reason for the change. I see no reason to depart from our old rule and would not make such a change.

WHITE, J., joins in this concurrence.