STATE OF NEBRASKA, APPELLEE, V. RODNEY K. TRIMBLE, APPELLANT.

371 N.W.2d 302

Filed August 2, 1985. No. 84-777.

James R. Wefso, for appellant.

A. Eugene Crump, Deputy Attorney General, and Lynne R. Fritz, for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

White, J.

The defendant was convicted in the district court for Sheridan County on August 14, 1984, of theft and second degree arson. He was sentenced to 2 years' imprisonment for theft and 8 years 9 months' imprisonment for second degree arson. The defendant has appealed to this court, assigning nine errors. We consider only the claim as to the insufficiency of the evidence. We reverse.

On May 17, 1983, Hinn's Restaurant in Gordon, Nebraska, was damaged by fire and smoke. After the fire was controlled, employees of the restaurant entered the building with a local police officer and firefighters and discovered that the previous night's receipts, estimated at $390, were missing. Also, a cash till box usually containing $50-$60 was empty.

Gerald Larson, deputy state fire marshal, investigated and concluded that the fire started on top of the grill. Eggs, egg cartons, flour, and grease had been dumped on the grill, and the grill had been turned on. The deep-fat fryers had also been turned on, but the circuit breaker required to turn on the deep-fat fryers was still in the off position and the fryers did not heat.

Michael Streeter, a Nebraska State Patrol investigator, testified that the southeast takeout door was found open by the firemen. Investigator Streeter searched the basement and found three matches and three cigarette butts. They appeared to be Marlboro 100's, and the butts were not crushed. The cigarettes

were put out by mashing the lit end against a water heater. Trimble scraped the fire off his cigarettes in the same manner. Streeter testified that when he first observed the cigarette butts, they were dry and appeared fresh. By the time he returned to the basement, water had drained into the basement and the cigarette butts had become damp. The cigarette butts were sent to the State Patrol Criminalistics Laboratory, which identified blood group substance A in the saliva from the cigarette butts. Saliva samples from Trimble and Marty Hugen were obtained, and the laboratory determined that blood group substance A was identified from the saliva of Trimble. No blood group substance was identified from the saliva sample taken from Hugen. Saliva samples were not taken from any other employees, although all of the employees who worked the afternoon to closing shift on the day of the fire smoked cigarettes. Hugen testified that other employees had occasionally smoked in the basement. Trimble smoked two to three packs a day and usually smoked when he was away from the grill. Several of the employees also smoked Marlboro 100's, and they frequently borrowed cigarettes from each other.

At 1:30 a.m. on the night of the fire, police officers went to Trimble's home. They informed him of his constitutional rights, and he agreed to speak with them. The police found no flour, grease, or eggs on the clothing that Trimble had been wearing, and Trimble appeared as if he had just been awakened. The officers did not inspect Trimble's shoes, search the pockets of his clothing, or look for a carryout box, although one officer admitted that he had been told previously that Trimble had ordered a takeout dinner.

The defendant began working at the restaurant in January of 1983. On the night of the fire Trimble was called in by the assistant manager because the scheduled cook, Marty Hugen, did not report for work as scheduled. Hugen came in later, and Trimble departed after waiting a short while to make sure that Hugen would stay. At 7:45 p.m. Trimble returned to the restaurant and ordered a takeout dinner. While waiting for his dinner, Trimble drank two beers, checked recipes for his next shift, and went down to the basement to get some hamburger for the next day. Trimble normally worked the morning shift.

After getting his takeout dinner, Trimble testified, he went home, ate dinner, and went to bed. The other employees working that night testified that they did not see Trimble leave the restaurant. However, the employees were busy, as one employee, the waitress, did not show up that night. The assistant manager was performing the waitress duties along with her normal duties as cashier and assistant manager. The other two employees, Sherry Swallow, the dishwasher, and Marty Hugen, the cook, worked in the kitchen. Neither Investigator Streeter nor the fire marshal found the box from the takeout dinner in the basement. Later, when questioned in his residence, Trimble pointed out to Streeter the box in his trash can.

On May 7, 1983, Trimble pled guilty to a misdemeanor theft charge involving the theft of money from Shirley Wiles' wallet. He was granted work release during the time he served a county jail sentence and continued to work at the restaurant. Trimble was still paying restitution to Wiles when the fire occurred.

Hugen and Wiles both testified that Wiles had previously loaned the restaurant keys to other employees. Additionally, there had been several occasions when employees had come to the restaurant to open for business and found doors unlocked. Shirley Wiles testified that she had noticed a bitter attitude on the part of an employee named Sheryl Buresh. Buresh had a workmen's compensation claim against the restaurant that resulted in litigation. There was also testimony of disputes Wiles had with both present and former employees.

Trimble continued to work for the restaurant in the cleanup operation after the fire, at a reduced wage. Trimble could not meet his financial obligations on this wage and was served an eviction notice by his landlord. Trimble contacted ABC Employment Agency in Colorado, and they promised him a job if he came to Colorado. The end of June 1983, Trimble had his utilities disconnected and sold some belongings. He departed Gordon for Colorado on July 4, 1983, and notified his mother and niece of his indefinite plans. Trimble obtained employment as a cook at the Old Plantation restaurant in Estes Park, Colorado.

This court on appeal will reverse a verdict of guilty based on

evidence whenever it is so lacking in probative force that the court can say as a matter of law it is insufficient to support a finding of guilty beyond a reasonable doubt. *State v. Hai Dang,* *ante* p. 120, 368 N.W.2d 486 (1985).

One accused of a crime may be convicted on the basis of circumstantial evidence if, taken as a whole, the evidence establishes guilt beyond a reasonable doubt. The State is not required to disprove every hypothesis but that of guilt. *State v. Piskorski,* 218 Neb. 543, 357 N.W.2d 206 (1984); *State v. Buchanan,* 210 Neb. 20, 312 N.W.2d 684 (1981). We have said that a conviction may rest solely on circumstantial evidence. *State v. Evans,* 214 Neb. 432, 334 N.W.2d 5 (1983). However, mere suspicion or speculation is not sufficient to sustain a conviction.

> "To justify a conviction on circumstantial evidence, it is necessary that the facts and circumstances essential to the conclusion sought must be proved by competent evidence beyond a reasonable doubt, and, when taken together, must be of such a character as to be consistent with each other and with the hypothesis sought to be established thereby and inconsistent with any reasonable hypothesis of innocence. . . . Any fact or circumstance reasonably susceptible of two interpretations must be resolved most favorably to the accused." . . . "[A] conviction should not be based upon suspicion, speculation, the weakness of the status of the accused, the embarrassing position in which he finds himself, or the mere fact that some unfavorable circumstances are not satisfactorily explained."

*State v. Klutts,* 204 Neb. 616, 619, 284 N.W.2d 415, 418 (1979).

The test of the sufficiency of circumstantial evidence in a criminal prosecution is whether the facts and circumstances tending to connect the accused with the crime charged are of such a conclusive nature as to exclude to a moral certainty every rational hypothesis except that of guilt. *State v. Costanzo,* 203 Neb. 586, 279 N.W.2d 404 (1979).

In this case the circumstantial evidence does not meet the test of sufficiency. There was nothing particularly unusual about Trimble's actions prior to or after the fire. In the course of his employment he was required to go to the basement for supplies.

He was a heavy smoker, and it would not have been unusual for him to smoke in the basement. We do not see how the finding of Trimble's cigarette butts in the basement links him to the cause of the fire. The fact that he was in the restaurant the night of the fire does not point to guilt. He was initially called in to cook by his employer.

The fact that Trimble left Gordon on July 4, 1983, does nothing to establish his guilt.

> Departure from the scene after a crime has been committed, of itself, does not warrant an inference of guilt. . . . [T]he proper rule [is] that for departure to take on the legal significance of flight, there must be circumstances present and unexplained which, in conjunction with the leaving, reasonably justify an inference that it was done with a consciousness of guilt and pursuant to an effort to avoid apprehension or prosecution based on that guilt.

*State v. Lincoln*, 183 Neb. 770, 772, 164 N.W.2d 470, 472 (1969). After the fire Trimble worked at reduced wages for Hinn's Restaurant in the cleanup operation. The amount he was earning was not sufficient to make his rent payments, and he was served a notice of eviction. He departed Gordon about a month and a half after the fire, in search of employment. This departure, together with the other facts, does not, as a matter of law, constitute "flight" or infer guilt.

In this case all the evidence taken together is so lacking in probative force that we determine as a matter of law it is insufficient to support a finding of guilt beyond a reasonable doubt.

REVERSED.