STATE OF NEBRASKA, APPELLEE, V. TONY D. DAWSON, APPELLANT.
480 N.W.2d 700

Filed February 28, 1992.   No. S-90-756.

Robert E. Zielinski, of Byrne, Rothery, Lewis, Tubach, Zielinski & Peterson, for appellant.

Don Stenberg, Attorney General, and Alfonza Whitaker for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

After a bench trial, the defendant, Tony D. Dawson, was convicted of theft by unlawful taking of property having a value of more than $1,000 and was sentenced to imprisonment for 3 to 5 years, with credit for 2 days. He has appealed and assigns as error the trial court's admission of certain exhibits, the trial court's overruling of the defendant's motion to dismiss at the close of the State's case, and the trial court's finding that the evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt.

The record shows that during the afternoon of February 3, 1990, the defendant was working as a courier for Midwest Armored Car Service in Omaha, Nebraska. As a courier, it was the defendant's responsibility to deliver change orders from banks to local merchants who had contracted with Midwest Armored Car Service. In addition, the courier would pick up deposits from the merchants to be delivered to area banks.

On the date in question, the defendant rode in the cab instead of the back of the armored truck because the driver, Clarence Curry, was new to the route. The defendant sat in the front of the vehicle to give Curry directions.

At approximately 2:40 p.m., the armored car stopped at the Albertson's grocery store located at 76th and Dodge Streets. The defendant got out of the cab of the armored car, and after obtaining a grocery cart from the store lot, went to the rear of the vehicle and removed the change order to be delivered to the Albertson's store.

The defendant entered the store and placed the change order on the ledge in front of the west window of the store's customer service counter. Then, the defendant was approached by Kenneth Efferding, the assistant grocery manager. While Efferding was taking the change order from the defendant, he began to cut open one of the change order packages. The defendant objected to this procedure and informed Efferding that he had to sign for the packages before he could open them. An argument developed between Efferding and the defendant over the procedure for receipting change orders, and Efferding contacted his superior.

After contacting his superior, Efferding agreed to sign for the change order before opening it. As Efferding signed the defendant's receipt book, he scribbled across the page. The defendant became upset with Efferding and exclaimed, "[Y]ou don't have to act like a asshole." The defendant informed Efferding that he had his rules and he had to work by them.

At that point, Efferding slammed the Plexiglas window down in front of the defendant and told the defendant to leave the store. The defendant refused to leave the store and demanded to talk to Efferding's supervisor.

James Tworek, the assistant store director, was called. Tworek asked the defendant what the problem was, and the defendant attempted to explain the situation. During his explanation, the defendant stated that Efferding should not act like such an asshole. Tworek became disturbed with the defendant's language because there were numerous customers in that area of the store. Tworek asked the defendant to leave the store, and the defendant requested to go elsewhere in the store to discuss the problem. Tworek refused to discuss the matter further and escorted the defendant to the front door of the store.

The defendant walked out of the store and climbed into the

cab of the armored car. The defendant explained to the driver, Curry, what had occurred in the store and told Curry that their supervisor, Brad Sotello, would have to return to the Albertson's store to pick up the deposit because the defendant was asked to leave before he got the deposit.

After finishing the remainder of their route, the defendant and Curry returned to the Midwest Armored Car Services building. The defendant told Sotello what had occurred at the Albertson's store, and after cleaning out the truck and securing the deposits, Sotello returned to Albertson's to pick up its deposit. Albertson's employees were unable to locate the deposit bags and believed that the defendant had taken them.

The deposit consisted of approximately $13,000 in cash and $62,000 in checks, charge card receipts, and food stamps. Albertson's deposit bags are about the same color of blue as Midwest's courier bags.

Efferding testified that when he approached the defendant at the customer service counter, the change order was on the counter. Efferding then got the deposit out of the safe and handed it and Albertson's receipt book to the defendant; however, Efferding failed to have the defendant sign Albertson's receipt book prior to handing him the deposit. After he handed the deposit bags to the defendant, Efferding began to cut open the change order.

Efferding further testified that after he finally signed for the change order, the defendant said, "[Y]ou don't need to be an asshole." Efferding asked the defendant to leave, and when the defendant refused, Efferding sent for Tworek. At this time the deposit bags were still on the customer service counter.

Although Efferding did not see the defendant do anything with the deposit bags or the receipt book, he noticed they were gone when the defendant left the store.

Tworek testified that he never saw Albertson's deposit bags on the counter. When the defendant left the store, Tworek said, the defendant was carrying a cream-colored courier bag.

Douglas Sheets, Albertson's grocery manager, testified that after Efferding went over to the customer service counter to receive the change order, he saw Efferding take two deposit bags out of the safe and put them on the ledge of the customer

service counter. Sheets saw the defendant's hands on the deposit bags after this and observed Efferding verifying the change order.

Sheets then heard Efferding and the defendant arguing. Sheets testified that Efferding then moved over to the east customer service window to relieve the woman who was working there so she could get Tworek. At that time, Sheets did not see the deposit bags. Sheets said the defendant left the store carrying a cream-colored bag.

Duane Ames, Albertson's drug manager, testified that he saw Efferding take the blue deposit bags out of the safe; however, he did not see what happened to them after that. Ames did not see the defendant with Albertson's deposit bags. He only saw the defendant carrying a beige bag when he left the store.

Curry testified that when the defendant left Albertson's, he returned to the cab of the armored car. Curry did not see any Albertson's deposit bags with the defendant or in the courier bag when the defendant returned to the vehicle.

The defendant continued to ride in the cab of the armored car until they finished the route. After the last stop, the defendant rode in the back of the vehicle.

The driver, Curry, testified that when they returned to Midwest Armored Car Services headquarters the defendant told him that he wanted to warm up his car; however, Curry never saw the defendant go to his car. The defendant testified that although he had intended to warm up his car, he did not get a chance to do so.

The defendant testified that when he went into the Albertson's store with the change order, he put the change on the customer service counter and then set his blue courier bag on the ledge. Nothing was ever given to him. He testified that he did not take Albertson's deposit bags, because if he had taken possession of them he would have signed for them.

The defendant and Curry testified that the defendant was using a blue courier bag. Sotello testified that Midwest's couriers use only blue courier bags.

The defendant was arrested on February 5, 1990. Police found two box cutters in a pocket of the defendant's blue jean jacket.

The box cutters were found to have some blue fibers on them. The fibers were analyzed by Jeffrey Patterson of the state crime lab.

Patterson compared the fibers found on the box cutters with fibers from exhibits 18 and 19, two of Albertson's deposit bags, which had been received into evidence over the defendant's objection. Patterson concluded that the fibers from the box cutters were similar in color and size to those from Albertson's deposit bags. All of the fibers tested were cotton.

The defendant testified he had purchased the box cutters on the day before his arrest for his girl friend to use in trimming cardboard backing from jigsaw puzzles she put together and mounted on cardboard. He had used one of the cutters to cut his keys loose from some threads inside his jacket pocket.

At the close of the State's case, the defendant made a motion to dismiss. After the trial court overruled his motion, the defendant presented his evidence. This waived any error in the ruling on his motion.

"A defendant who moves for a directed verdict at the close of the State's evidence and who, upon the overruling of such motion, proceeds with the trial and introduces evidence waives any error in the ruling on the motion for a directed verdict." *State v. Morley*, 239 Neb. 141, 147, 474 N.W.2d 660, 666 (1991).

The defendant also contends that the trial court erred in admitting exhibits 18 and 19 into evidence over his objection as to foundation and relevancy. He claims the receipt of this evidence was prejudicial to his right to a fair trial because there was no evidence in the record that the exhibits were of the same fabric or color as the bags that were missing; however, the record does show that an Albertson's employee had placed the missing deposit into bags similar to exhibits 18 and 19.

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Rev. Stat. § 27-401 (Reissue 1989). To be relevant, evidence must be rationally related to an issue by a likelihood, not a mere possibility, of proving or disproving the issue to be determined.

*State v. Baltimore*, 236 Neb. 736, 463 N.W.2d 808 (1990).

Since exhibits 18 and 19 had some slight relevance, the trial court did not err in admitting them.

For his final assignment of error, the defendant contends the evidence is insufficient to find him guilty of theft by unlawful taking. He argues there is no direct evidence of his taking or possessing the missing deposit bags. He relies on *State v. Trimble*, 220 Neb. 639, 371 N.W.2d 302 (1985), and argues that the circumstantial evidence is insufficient to establish a taking by him because the facts and circumstances are reasonably susceptible of two or more interpretations.

In *Trimble*, this court stated:

> " 'To justify a conviction on circumstantial evidence, it is necessary that the facts and circumstances essential to the conclusion sought must be proved by competent evidence beyond a reasonable doubt, and, when taken together, must be of such a character as to be consistent with each other and with the hypothesis sought to be established thereby and inconsistent with any reasonable hypothesis of innocence. . . . Any fact or circumstance reasonably susceptible of two interpretations must be resolved most favorably to the accused.' " . . . " '[A] conviction should not be based upon suspicion, speculation, the weakness of the status of the accused, the embarrassing position in which he finds himself, or the mere fact that some unfavorable circumstances are not satisfactorily explained.' " *State v. Klutts*, 204 Neb. 616, 619, 284 N.W.2d 415, 418 (1979).
>
> The test of the sufficiency of circumstantial evidence in a criminal prosecution is whether the facts and circumstances tending to connect the accused with the crime charged are of such a conclusive nature as to exclude to a moral certainty every rational hypothesis except that of guilt. *State v. Costanzo*, 203 Neb. 586, 279 N.W.2d 404 (1979).

*Trimble*, 220 Neb. at 643, 371 N.W.2d at 305.

In *State v. Morley*, 239 Neb. at 149, 474 N.W.2d at 666, this court specifically disapproved of the statement in the *Trimble* case to the effect that circumstantial evidence is not sufficient to

support a conviction in a criminal case "unless the State. disproved every hypothesis but that of guilt."

The defendant, however, is presumed to be not guilty and cannot be convicted until the State has proved the defendant guilty beyond a reasonable doubt. Thus, in a long line of cases we have held that in determining the sufficiency of circumstantial evidence to support a conviction, " '[a]ny fact or circumstance reasonably susceptible of two interpretations must be resolved most favorably to the accused.' " *State v. Earlywine*, 191 Neb. 533, 535, 215 N.W.2d 895, 896 (1974).

"Conjecture, speculation, or choice of quantitative possibilities are, of course, not proof." *Mustion v. Ealy*, 201 Neb. 139, 145, 266 N.W.2d 730, 734 (1978).

The State may not rely alone on inferences that would support a finding of guilt " '[w]here several inferences are deducible from the facts presented, which inferences are opposed to each other, but equally consistent with the facts proved . . . .' " See *Anderson v. Farm Bureau Ins. Co.*, 219 Neb. 1, 5, 360 N.W.2d 488, 491 (1985).

"Where several inferences are deducible from the facts presented, which inferences are opposed to each other but equally consistent with the facts proved, the plaintiff does not sustain its position by a reliance alone on the inferences which would entitle it to recover." *Ward Cattle Co. v. Farm Bureau Ins. Co.*, 223 Neb. 69, 73, 388 N.W.2d 89, 92 (1986).

In order for the State to prove a taking by the defendant in this case, it was necessary for the evidence to show that the defendant had the two deposit bags in his possession at the time he left the store. On this point the evidence of the State is extremely weak.

Although Efferding testified at one point that he "handed" the deposit bags to the defendant, in other testimony he stated he "set them down" in front of the defendant and the bags were lying on the counter when he closed the window. The defendant did not leave the customer service counter area until after he had talked to Tworek, the assistant store director. Tworek testified that he never saw the deposit bags.

None of the Albertson's employees explained why they allegedly turned some $75,000 in cash, checks, charge card

receipts, and food stamps over to an armored car service courier without taking a receipt for the deposit, especially since the "ledger" or receipt book had been placed on top of the deposit bags.

Although the circumstantial evidence in this case casts suspicion upon the defendant, we think the inference of guilt was not stronger than any reasonable inference of nonguilt. Consequently, it was not sufficient to overcome the presumption of innocence and will not support a finding of guilt beyond a reasonable doubt.

The judgment is reversed, and the cause remanded with directions to dismiss the information.

REVERSED AND REMANDED WITH DIRECTIONS.