STATE OF NEBRASKA, APPELLEE, V. DEAN JANSEN, APPELLANT.

486 N.W.2d 501

Filed July 31, 1992.   No. S-91-361.

William J. Klimisch, of Goetz, Hirsch & Klimisch, for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Twenty-one-year-old Dean Jansen appeals the affirmation of his Cedar County Court conviction and sentence for delivering and procuring alcoholic liquor, consisting of beer, for 42 minors, in violation of Neb. Rev. Stat. § 53-180 (Reissue 1988). He was sentenced to 15 days in jail and fined $900.

In relevant part, § 53-180 provides: "No person shall sell, give away, dispose of, exchange, or deliver, or permit the sale, gift or procuring of any alcoholic liquors to or for any minor."

In his appeal, Jansen claims that (1) there was insufficient evidence to convict him and that (2) the trial court erred in refusing to suppress evidence used to convict him.

Because we agree with the defendant's first assignment of error and find, as a matter of law, that there was insufficient evidence to convict Jansen, it is not necessary to discuss his second assignment of error.

"In reviewing a criminal conviction, the Supreme Court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and the verdict will be affirmed, in the absence of prejudicial error, if properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction."

*State v. Jansen, ante* p. 196, 198, 486 N.W.2d 913, 914 (1992), quoting *State v. Sassen*, 240 Neb. 773, 484 N.W.2d 469 (1992). See, also, *State v. LaFreniere*, 240 Neb. 258, 481 N.W.2d 412 (1992); *State v. Dawson*, 240 Neb. 89, 480 N.W.2d 700 (1992).

In *State v. Klutts*, 204 Neb. 616, 619, 284 N.W.2d 415, 418 (1979), quoting this court's syllabus point in *Reyes v. State*, 151 Neb. 636, 38 N.W.2d 539 (1949), we said: " '[A] conviction should not be based upon suspicion, speculation, the weakness of the status of the accused, the embarrassing position in which he finds himself, or the mere fact that some unfavorable circumstances are not satisfactorily explained.' "

In the present case, there was no eyewitness or other direct evidence that Dean Jansen delivered or procured alcoholic liquor for one or more minors. In its effort to convict Jansen, the State relied upon circumstantial evidence.

When we take the view most favorable to the State, the record reflects that at all relevant times, Dean Jansen's father, Elmer Jansen, owned a farmstead in Cedar County. The farmstead house was not occupied, and the other buildings were used for the storage of grain and machinery. Cattle were kept at the farmstead.

On May 23, 1990, a State Patrol trooper received an anonymous telephone call advising him that a "keg party" involving underage individuals was taking place in Cedar

County. County and state law enforcement officers gathered and determined that the alleged keg party was being held at an unoccupied farmstead owned by Jansen.

About 1:05 p.m., law enforcement officers in two unmarked cars drove to the farm site. When the officers were an eighth to a quarter mile east of the farm site, they observed a large gathering of individuals at the farm site. When the officers reached the long lane from the county road to the unoccupied farmhouse, they saw five or six vehicles parked on the county road, and they also observed a pickup truck being driven from the county road into the farmstead. They further observed Elmer Jansen driving his pickup truck toward the county road from the farmstead. An officer testified that on the dashboard of Jansen's truck was a makeshift sign bearing the words "Not Responsible for Accidents" written in red ink. There was testimony of a similar sign propped up against the porch of the unoccupied farmhouse. Elmer Jansen denied that he had displayed any such signs.

Without Elmer Jansen's prior permission, without observing any crimes being committed, and without obtaining a search warrant, the law enforcement officers entered the lane to the farmstead. When they were an eighth of a mile from the county road, the officers observed 42 individuals, all of whom were under the age of 21 years, and a keg of beer and other beer containers. No individual 21 years of age or older was present. The evidence is uncontroverted that Dean Jansen was not present at the party. He testified that he was at work. The individuals present dropped beer cups and bottles and began to leave when they saw the law enforcement officers. They stayed when requested to do so by the officers. The officers conducted interviews and obtained the names, addresses, and birth dates of 42 underaged individuals. The officers confiscated one 15-gallon keg of beer, together with a tap; a Fiberglas vessel that contained the keg; and over 50 cans of beer from various places around the farmstead, including the roof and the inside of the unoccupied house. Elmer Jansen testified that he had not furnished the beer for the party. Because there was insufficient evidence to convict him of permitting the sale, gift, or procuring of any alcoholic liquors to or for any minor, we set

aside Elmer Jansen's conviction. See *State v. Jansen, supra.* The two cases of Elmer Jansen and Dean Jansen were consolidated for trial.

There was evidence that sometime during the evening of May 22, 1990, Dean Jansen purchased a keg of beer from a Yankton, South Dakota, gas and convenience store. A store employee wrote a number on the keg which was visible only under a black light. The number was supposed to correspond with the number of the keg on an inventory list of kegs sold, apparently in compliance with city of Yankton ordinance No. 625. The salesclerk testified the keg Dean Jansen purchased "would have that number N22 on it — or N21." "N-21" was the number listed on the inventory sheet. A deputy sheriff testified that when the keg confiscated at the party on Elmer Jansen's unoccupied farmstead was placed under a black light, "We saw the letter N and a number, and the number is kind of scribbled, but it's 22. N22." The inventory sheet, which was received in evidence, reflects that the keg Dean Jansen purchased was "N-21." After the deputy was shown the inventory sheet, he testified on cross-examination that the number on the keg "is not real legible. It looks more like a 22 than a 21." "[F]rom what you could tell it had N22 on the keg?" the deputy was asked. He replied, "That's what it looks like." On redirect, the deputy sheriff testified: "The last two digits are hard to read. It looked more like a 22 than a 21 to me, but you can hardly read it." Jansen's purchase of keg N-21 was listed at the top of the inventory sheet received in evidence. Whether the preceding inventory sheet, if any, reflects a sale of keg N-22 or any other keg sale on May 22 is not reflected in the evidence. The inventory sheet does reflect that keg N-22 was sold on May 25 to another person.

Dean Jansen and two of his friends testified that they were to have a reunion of their high school class on the Friday evening following Jansen's purchase of the keg on May 22 and that Jansen was to purchase the beer. The reunion was scheduled for May 25. Jansen testified that he bought the keg on Tuesday because it was hard to find a keg "at the last minute," particularly at that time of year. After he purchased the keg, Jansen said he placed the keg, with ice around it, in a white

barrel in his father's garage at the home where he and his parents lived. He said he laid the tap he had obtained from the convenience store with the keg and covered the keg with a burlap sack to keep the beer cool.

The defendant testified that when he got home from work the next day, which would have been May 23, he did chores and then checked the keg. He said the keg was gone. Jansen said he ate supper, cleaned up, and went to the "Lazy D" in Yankton, where there was a dance. There he talked to a friend. Jansen's friend rode with Jansen to where he purchased the keg of beer. Jansen testified he told the salesclerk that he had bought a keg and tap there the previous night and that "it got stolen out of my garage." He paid the clerk $37 in cash for the cost of the keg and tap. In return, he said he obtained a check he had left as a deposit on the keg and tap. The salesclerk testified that Jansen wanted the inventory sheet, but she refused to give it to him. Jansen denied asking for the sheet. Jansen further testified, "I didn't furnish no beer for no minors." He denied knowing anything about the underage beer party on his father's unoccupied farmstead.

The salesclerk who sold Jansen his keg of beer testified that exhibit 2, which was identified as the keg obtained by law enforcement officers at the unoccupied farmstead owned by Elmer Jansen, was the type of keg sold to the defendant on May 22, but that the tap "doesn't look like one of ours." She could not testify whether Jansen had obtained a tap with the keg of beer he purchased from her store. The salesclerk further testified that without looking at the store's number on the keg she could not say whether the keg found at the unoccupied Jansen farmstead was the keg she sold to Dean Jansen. The tap introduced in evidence was seized along with the keg at the site of the underage beer party.

At trial, Dean Jansen was entitled to the presumption of innocence and could not be convicted until the State proved him guilty beyond a reasonable doubt of delivering or procuring alcoholic liquor for minors. See *State v. Dawson*, 240 Neb. 89, 480 N.W.2d 700 (1992). Conjecture and speculation are not proof. *Id.*

A defendant may be convicted by circumstantial evidence

which establishes the defendant's guilt beyond a reasonable doubt. The State is required to establish the defendant's guilt for the crime charged, but is not required to disprove every hypothesis consistent with the defendant's presumed innocence. *State v. Zitterkopf*, 236 Neb. 743, 463 N.W.2d 616 (1990).

As previously indicated, the evidence presented by the State to convict Dean Jansen was purely circumstantial. The fact that Jansen purchased a keg of beer and his testimony that it was stolen from his father's garage are consistent with his innocence. The State's failure to adduce evidence that the beer keg the law enforcement officers seized at the underage beer party was the identical keg that Jansen purchased does not lend credence to the State's theory that Jansen supplied beer to one or more of the 42 underage individuals at the party. Taken as a whole, the State's evidence, at most, casts a cloud over Jansen as the supplier of the beer for an underage beer party. Taking into consideration the presumption of innocence surrounding Jansen and the evidence adduced at trial, the State's evidence is insufficient as a matter of law for a fact finder to conclude beyond a reasonable doubt that Dean Jansen supplied beer to the juveniles drinking on his father's farmstead. His conviction and sentence must be vacated.

The judgment is reversed and the cause remanded to the district court for Cedar County with directions to remand the cause to the Cedar County Court with directions to vacate Dean Jansen's conviction and sentence and to dismiss the State's complaint due to insufficient evidence.

REVERSED AND REMANDED WITH DIRECTIONS.