Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/14/2016 09:09 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
CODY OLBRICHT, ALSO KNOWN AS
CODY OLBRICH, APPELLANT.
___ N.W.2d ___

Filed October 14, 2016.    No. S-15-404.

1. **Criminal Law: Convictions: Evidence: Appeal and Error.** When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2. **Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

3. **Criminal Law: Minors: Proof.** The provisions of Neb. Rev. Stat. § 28-707 (Cum. Supp. 2014) do not require the State to prove a minor child was in the exclusive care or custody of the defendant when the child abuse occurred.

4. **Criminal Law: Minors: Intent.** There is no requirement under Nebraska law that the defendant be physically present when the child abuse occurs, or that the defendant be the only person present, so long as he or she knowingly, intentionally, or negligently permits the child abuse.

5. **Criminal Law: Minors: Circumstantial Evidence: Proof.** Evidence showing a child was in the defendant's sole care during the timeframe when the child suffered injuries is circumstantial evidence from which it can reasonably be inferred that the defendant caused such injuries,

but proof of sole or exclusive care is not a necessary prerequisite to proving child abuse.

6. **Circumstantial Evidence: Proof.** A fact proved by circumstantial evidence is nonetheless a proven fact.

7. **Circumstantial Evidence.** Circumstantial evidence is not inherently less probative than direct evidence.

8. **Courts: Appeal and Error.** Upon reversing a decision of the Nebraska Court of Appeals, the Nebraska Supreme Court may consider, as it deems appropriate, some or all of the assignments of error the Court of Appeals did not reach.

9. **Motions to Dismiss: Directed Verdict: Waiver: Appeal and Error.** A defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution, and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge correctness in the trial court's overruling the motion for dismissal or a directed verdict but may still challenge the sufficiency of the evidence.

10. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

11. **Criminal Law: Motions for New Trial: Appeal and Error.** In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed.

12. **Sentences.** When a sentence orally pronounced at the sentencing hearing differs from a later written sentence, the former prevails.

13. ____. Imposing a sentence within statutory limits is a matter entrusted to the discretion of the trial court.

14. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

15. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

16. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as

well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

Petition for further review from the Court of Appeals, MOORE, Chief Judge, and IRWIN and INBODY, Judges, on appeal thereto from the District Court for Scotts Bluff County, RANDALL L. LIPPSTREU, Judge. Judgment of Court of Appeals reversed, and cause remanded with directions.

Leonard G. Tabor for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

STACY, J.

## NATURE OF CASE

After a bench trial in the district court for Scotts Bluff County, Cody Olbricht, also known as Cody Olbrich, was convicted of knowing and intentional child abuse resulting in serious bodily injury. The Nebraska Court of Appeals reversed the conviction and vacated the sentence, holding the evidence was insufficient to support the conviction.[1] We granted the State's petition for further review. Because we conclude the evidence was sufficient to sustain the conviction, we reverse the Court of Appeals' decision and remand the matter with directions to affirm Olbricht's conviction and sentence, as modified.

## FACTS

On September 28, 2014, 3-year-old A.M. was admitted to an emergency room in Scottsbluff, Nebraska, with bruising on her face, torso, arms, and legs. A.M. was not interactive, appeared sleepy, and had bleeding in the white part of her left

---

[1] *State v. Olbricht*, 23 Neb. App. 607, 875 N.W.2d 868 (2016).

eye. Due to A.M.'s symptoms, doctors suspected she was suffering from a subdural hemorrhage (brain bleed). A CAT scan revealed a brain bleed and infarct in A.M.'s brain. Further examination revealed A.M. had a laceration on the left lobe of her liver. She was transferred by helicopter to a hospital in Denver, Colorado, for further treatment.

The emergency room doctor in Scottsbluff suspected A.M. had been abused and notified the authorities. Olbricht, the live-in boyfriend of A.M.'s mother, was subsequently charged with knowing and intentional child abuse resulting in serious bodily injury.[2] The operative information alleged the crime occurred "[o]n or about March, 2014 through September, 2014." Olbricht waived a jury trial, and the matter was tried to the court.

### Evidence at Trial

Cassandra Miller, A.M.'s mother, testified for the State. In addition to testifying about the events leading up to A.M.'s hospitalization, Miller testified about prior injuries A.M. had received while in Olbricht's care. According to Miller, in March 2014, A.M. sustained a cut to her bottom lip while in Olbricht's care. And in separate instances in September, A.M. incurred burns to her lips and face, various bruises on her cheek and hips, and retinal bleeding while in Olbricht's care. There were no rule 404[3] objections to this testimony.

On the evening of September 27, 2014, the day before A.M. was admitted to the hospital, Miller and Olbricht took A.M. to a fast-food restaurant and then to a babysitter. A.M. vomited after leaving the restaurant. Miller changed A.M.'s clothes, and then she and Olbricht left A.M. with the babysitter for the night.

The babysitter noticed A.M. had bruises on her face, neck, and back. According to the babysitter, A.M. was lethargic and

---

[2] Neb. Rev. Stat. § 28-707(1) and (7) (Cum. Supp. 2014).

[3] Neb. Evid. R. 404, Neb. Rev. Stat. § 27-404 (Cum. Supp. 2014).

vomited several more times that night. The babysitter took a photograph of A.M.'s bruises and sent it to A.M.'s grand-mother, Lynelle Pahl. Pahl was at work when she received the photograph via text message and said she would take A.M. to the hospital first thing in the morning if A.M. was not better. The babysitter also testified, over objection, that when she informed A.M. that her grandmother was going to pick her up, A.M. became very upset and seemed scared to go home:

> She seemed terrified and she didn't want to go home. She kept expressing to me she didn't want to go home.
>
> . . . .
>
> . . . And then when I asked her if somebody was hurt-ing her at home and she explained to me that, yes, and I said who and she said, "daddy." And I said, "where does daddy hurt you?" She pointed to her shin and she pointed to her foot. And I had rubbed her head and I felt lumps all along her head and I said, "did he hit your head, too," and she said yes.

The evidence showed A.M. referred to Olbricht as "daddy."

A.M.'s regular daycare provider testified that between March and September 2014, A.M. regularly came to daycare with bruises on her face, arms, back, and legs. When Olbricht came to pick up A.M. from daycare, A.M. would become upset and cry, because she did not want to go home with him. In April, after noticing A.M.'s face was "really swol-len," seeing bruises down her back, and seeing a distinctive mark across her left buttocks, A.M.'s daycare provider called the Department of Health and Human Services to report her concerns. The provider testified that after A.M. was released from the hospital into Pahl's care, she has had no injuries or bruises.

Two doctors testified for the State. Dr. Jeffrey Salisbury, A.M.'s emergency room doctor, testified that the subdural hemorrhage and infarct in A.M.'s brain and the laceration to A.M.'s liver were injuries that presented a substantial risk of death. According to Dr. Salisbury, there was no way to tell

exactly how old A.M.'s brain injury was, but it was his opinion that the brain injury was "acute," meaning it could have been anywhere from 5 minutes to 2 weeks old.

Dr. Andrew Sirotnak, a forensic pediatrician and a member of the medical team that treated A.M. at the hospital in Denver, testified that in his opinion, A.M.'s brain injury occurred "a day or two" or a "few days" prior to her hospitalization. Dr. Sirotnak testified that A.M.'s brain injury was "clearly something that was inflicted" and that the injury was likely the result of being "thrown from something or thrown by something." Dr. Sirotnak could not tell when the liver injury occurred. Dr. Sirotnak diagnosed A.M. as a "battered child," meaning "a child that's been injured in a multi system manner over time." According to Dr. Sirotnak, A.M.'s injuries were likely nonaccidental because some occurred over soft tissue and others displayed a bruising pattern that indicated they were inflicted with an object. It was Dr. Sirotnak's opinion that A.M. had been hit with a wire hanger because the bruises on her legs and hip were triangular in shape. With respect to what caused the liver laceration, Dr. Sirotnak testified it was likely caused by blunt trauma akin to the amount of force seen in a car accident. Dr. Sirotnak opined that based on A.M.'s medical history, there was no accidental explanation for her liver injury.

At the close of the State's case, Olbricht moved for a directed verdict. The court overruled the motion, and Olbricht proceeded to call numerous family members and acquaintances who testified that A.M. was always healthy, happy, and clean and that Olbricht had never abused her. Olbricht also called Miller to testify for the defense. Miller testified that, in addition to the times A.M. was injured while in Olbricht's care, A.M. also had been injured while in Miller's care. Miller testified that in August or September 2014, she and Olbricht were home when A.M. fell down the stairs. Miller also testified that on September 16, she was with A.M. at the park when A.M. was hit in the head by a swing.

Olbricht testified in his own defense. He did not dispute that A.M. had a history of prior injuries while in his care as described by other witnesses. Instead, Olbricht denied that he caused A.M.'s injuries and offered a variety of explanations for how the injuries occurred, all of which either suggested A.M. was responsible for her own injuries or another child had inflicted the injuries.

The district court found the brain bleed and the liver laceration created a substantial risk of death and were serious bodily injuries. The court recounted the evidence and concluded that the injuries were nonaccidental and that "[t]he majority, if not all, of [A.M.'s] documented injuries occurred when she was in the sole physical care of . . . Olbricht." Based on this evidence, the court found Olbricht guilty of knowing and intentional child abuse resulting in serious bodily injury.

After the court imposed sentence, Olbricht timely appealed, assigning that the trial court erred in (1) finding him guilty, (2) denying his motion for directed verdict, (3) overruling his evidentiary objections, (4) overruling his motion for new trial, and (5) imposing an excessive sentence.

## Court of Appeals

The Court of Appeals held the evidence was insufficient to support Olbricht's conviction, "because the evidence presented never showed, directly or circumstantially, that A.M.'s serious bodily injuries occurred during a discrete timeframe when Olbricht was the only adult in her presence."[4] That court laid out its reasoning as follows:

> According to the evidence at trial, the timeframe in which A.M.'s serious bodily injuries were inflicted was broad. Specifically, Dr. Salisbury testified that A.M.'s brain injury was "acute," meaning it could have occurred anywhere from 5 minutes to 2 weeks before she came to the emergency room. Dr. Sirotnak testified that A.M.'s

---

[4] *State v. Olbricht, supra* note 1, 23 Neb. App. at 615, 875 N.W.2d at 874.

brain injury occurred within "a day or two" of her hospitalization. Neither doctor provided a specific timeframe in which the liver injury occurred.

A.M. was not in Olbricht's sole care for the week or the "day or two" before she was hospitalized. For example, Miller was with both Olbricht and A.M. during the afternoon and evening of September 27, 2014, the day before A.M. was hospitalized. Additionally, A.M. was alone with Pahl for approximately an hour 6 days before her hospitalization. Furthermore, the night before her hospitalization, A.M. was in the care of the babysitter and neither Olbricht nor Miller was present. Therefore, pursuant to Dr. Sirotnak's opinion that the injury occurred within "a day or two" of A.M.'s hospitalization, Olbricht, Miller, and the babysitter cared for A.M. during the relevant timeframe. Pursuant to Dr. Salisbury's opinion that A.M.'s brain injury was between 5 minutes and 2 weeks old, Olbricht, Miller, the babysitter, and Pahl all cared for A.M. during the relevant timeframe. With respect to A.M.'s liver injury, neither doctor provided a timeframe during which the injury was inflicted, thereby making it impossible to establish that Olbricht was A.M.'s sole caregiver when the liver laceration occurred. . . . Here, the lack of evidence that Olbricht had exclusive custody of A.M. during the time when her substantial injuries were inflicted prevents the conclusion that Olbricht committed child abuse.[5]

The Court of Appeals acknowledged there was circumstantial evidence that Olbricht had caused A.M.'s injuries, but found that this evidence was insufficient to support the conviction:

It is true that Olbricht and Miller testified about a number of injuries that occurred while Olbricht was supervising A.M. However, the record does not support a finding

---

[5] *Id.* at 618-19, 875 N.W.2d at 875-76.

that Olbricht caused either of the two injuries that could have supported his conviction: A.M.'s brain bleed and lacerated liver. Specifically, the State failed to adduce evidence that A.M. was in Olbricht's sole care at the time she received the injuries that led to the brain bleed or lacerated liver.

We note that there was some circumstantial evidence that A.M. was afraid of Olbricht, that she said Olbricht hurt her, and that she had previously suffered injuries while in Olbricht's care. However, this evidence is insufficient to overcome the fact that at least two other individuals could not be excluded as having caused the brain bleed and lacerated liver that are of significance in this case.[6]

Because the Court of Appeals concluded the evidence at trial was legally insufficient, it held the Double Jeopardy Clause barred retrial. And because it reversed Olbricht's conviction and vacated the sentence, it did not address his other assignments of error.

We granted the State's timely petition for further review.

ASSIGNMENT OF ERROR

The State assigns that the Court of Appeals erred in concluding the evidence was insufficient to support the conviction.

STANDARD OF REVIEW

[1] When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[7]

---

[6] *Id.* at 619, 875 N.W.2d at 876.

[7] *State v. Juranek*, 287 Neb. 846, 844 N.W.2d 791 (2014); *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013).

## ANALYSIS

### SUFFICIENCY OF EVIDENCE

The State charged Olbricht with knowing and intentional child abuse resulting in serious bodily injury under § 28-707. That statute provides in relevant part:

(1) A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be:

. . . .

(b) Cruelly confined or cruelly punished;

. . . .

(7) Child abuse is a Class II felony if the offense is committed knowingly and intentionally and results in serious bodily injury as defined in . . . section [28-109].

Under Neb. Rev. Stat. § 28-109(20) (Reissue 2008), "[s]erious bodily injury" is defined as "bodily injury which involves a substantial risk of death, or which involves substantial risk of serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body."

As such, because Olbricht was charged with intentional child abuse resulting in serious bodily injury, the State was required to prove beyond a reasonable doubt that (1) Olbricht caused or permitted A.M. to be cruelly confined or cruelly punished; (2) he did so knowingly and intentionally; (3) he did so on, about, or between March and September 2014, in Scotts Bluff County, Nebraska; (4) at the time Olbricht did so, A.M. was a minor child; and (5) as a result, A.M. sustained a serious bodily injury.

Olbricht's appellate brief does not point to any material element of the crime which lacked evidentiary support, but instead argues generally that the circumstantial evidence adduced at trial lacked probative value. Through a variety of arguments, Olbricht emphasizes that he was not the only person to have access to A.M. during the timeframe when her injuries likely occurred, and he suggests the testimony of Miller and Pahl was not credible.

[2] As is often the case in child abuse prosecutions, the evidence at trial was largely circumstantial. But whether the evidence is direct, circumstantial, or a combination thereof, our standard of review is the same: An appellate court does not resolve conflicts in the evidence, pass on credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[8] The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[9]

In analyzing the sufficiency of the evidence in the present case, the Court of Appeals reasoned that "the lack of evidence that Olbricht had exclusive custody of A.M. during the time when her [serious bodily] injuries were inflicted prevents the conclusion that Olbricht committed child abuse."[10] The Court of Appeals thus implied that proof of exclusive custody or care is required to support a conviction for knowing and intentional child abuse resulting in serious bodily injury. But no such requirement is found in the child abuse statute, and no such requirement is compelled by precedent.

[3,4] The provisions of § 28-707 do not contain any requirement that the State must prove a minor child was in the exclusive care or custody of the defendant when the child abuse occurred. To the contrary, under Nebraska law, one can commit child abuse if he or she "knowingly, intentionally, or negligently causes *or permits* a minor child" to be abused in one of the ways prohibited under § 28-707(1). (Emphasis supplied.) There is no requirement under Nebraska law that the defendant be physically present when the child abuse occurs, or that the defendant be the only person present, so long as he or she knowingly, intentionally, or negligently permits the child abuse.

---

[8] *State v. Hale*, 290 Neb. 70, 858 N.W.2d 543 (2015).

[9] *Id.*

[10] *State v. Olbricht, supra* note 1, 23 Neb. App. at 619, 875 N.W.2d at 876.

Nor have our cases reviewing child abuse convictions imposed an exclusive care requirement. In its analysis, the Court of Appeals cited to several cases in which we affirmed child abuse convictions.[11] In those cases, we noted there was evidence that the child had been in the sole care of the defendant during the timeframe when the injuries occurred, but we did so in the context of analyzing whether the evidence, construed in the light most favorable to the State, would permit a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. In those cases, we did not hold that, absent proof of exclusive or sole care, the evidence would have been insufficient to support a finding of guilt. And recently, in *State v. Cullen*,[12] we affirmed a conviction for knowing and intentional child abuse resulting in death, despite evidence that the defendant was not the only person with access to the child during the timeframe when the fatal injuries occurred.

[5] As such, our prior holdings illustrate that evidence showing a child was in the defendant's sole care during the timeframe when the child suffered injuries is circumstantial evidence from which it can reasonably be inferred that the defendant caused such injuries,[13] but that proof of sole or exclusive care is not a necessary prerequisite to proving child abuse.[14]

In this case, the Court of Appeals acknowledged there was circumstantial evidence that Olbricht caused A.M.'s serious bodily injuries, including evidence that A.M. was afraid of Olbricht, that A.M. said Olbricht hurt her, that A.M. had suffered previous injuries while in Olbricht's care, and that

---

[11] See, *State v. Chavez*, 281 Neb. 99, 793 N.W.2d 347 (2011); *State v. Robinson*, 278 Neb. 212, 769 N.W.2d 366 (2009); *State v. Kuehn*, 273 Neb. 219, 728 N.W.2d 589 (2007); *State v. Leibhart*, 266 Neb. 133, 662 N.W.2d 618 (2003).

[12] *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015).

[13] See cases cited *supra* note 11.

[14] See *State v. Cullen, supra* note 12.

Olbricht had cared for A.M. during the timeframe when she sustained serious bodily injuries. But it concluded this circumstantial evidence was "insufficient to overcome the fact that at least two other individuals could not be excluded as having caused the brain bleed and lacerated liver that are of significance in this case."[15] In other words, the Court of Appeals concluded the circumstantial evidence was insufficient to support the conviction, because the State had not disproved the possibility that others with access to A.M. may have caused the injuries. The suggestion that the State has a different or more onerous burden of proof in order to convict on circumstantial evidence is one with which appellate courts, including this court, have struggled historically.

Prior to 1981, when reviewing circumstantial evidence on appeal, we followed what was often referred to as the "accused's rule."[16] That rule required an appellate court to apply the inference most favorable to the accused when confronted with two inferences deducible from circumstantial evidence.[17] The accused's rule had the effect of requiring the State "to disprove every hypothesis of nonguilt in order to convict" using circumstantial evidence.[18]

But in *State v. Buchanan*,[19] we expressly overruled the accused's rule, observing that it "'lead[s] to serious departures from the proper appellate role in evaluating the sufficiency of evidence.'" In rejecting the accused's rule, we recognized "[c]ircumstantial evidence is entitled to be treated by the trier of facts in the same manner as direct evidence" and """"the implied distrust of circumstantial evidence is not warranted." . . .'"[20] We then stated:

---

[15] *State v. Olbricht, supra* note 1, 23 Neb. App. at 619, 875 N.W.2d at 876.

[16] See *State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323 (1995).

[17] *Id.*

[18] *Id.* at 545, 537 N.W.2d at 329.

[19] *State v. Buchanan*, 210 Neb. 20, 26, 312 N.W.2d 684, 688 (1981).

[20] *Id.*

We believe that we must once and for all abandon any notion that before an accused may be convicted on the basis of circumstantial evidence alone, the State must disprove every hypothesis but that of guilt. One accused of a crime may be convicted on the basis of circumstantial evidence if, taken as a whole, the evidence establishes guilt beyond a reasonable doubt. The State is not required to disprove every hypothesis but that of guilt.[21]

Despite our strong language in *Buchanan*, the accused's rule crept back into our jurisprudence in *State v. Trimble*,[22] prompting us to again reject the rule in *State v. Morley*,[23] where we noted:

[O]n occasion the ghost of a dead rule of law returns to temporarily haunt the halls of justice. In an effort to exorcise this mischievous spirit, we hereby reject the *Trimble* language which improvidently proclaims that a criminal conviction based solely on circumstantial evidence can stand only if the State has disproved every hypothesis but that of guilt.

Even after our pronouncement in *Morley*, the accused's rule proved difficult to eliminate. More than once, when reviewing convictions premised only on circumstantial evidence, we breathed life back into the discredited rule by evaluating circumstantial evidence using a standard of review which required inferences from such evidence to be construed in favor of the accused.[24] Under such a standard, we reversed criminal convictions premised on circumstantial evidence unless we were

---

[21] *Id.* at 28, 312 N.W.2d at 689.

[22] *State v. Trimble*, 220 Neb. 639, 371 N.W.2d 302 (1985), *overruled, State v. Morley*, 239 Neb. 141, 474 N.W.2d 660 (1991).

[23] *State v. Morley, supra* note 22, 239 Neb. at 149, 474 N.W.2d at 667.

[24] See, *State v. Skalberg*, 247 Neb. 150, 526 N.W.2d 67 (1995), *overruled, State v. Pierce, supra* note 16; *State v. Dawson*, 240 Neb. 89, 480 N.W.2d 700 (1992), *abrogated, State v. Pierce, supra* note 16.

able to conclude the inference of guilt was stronger than the inference of nonguilt.[25]

[6,7] In *State v. Pierce*,[26] we were confronted with our inconsistent holdings. We chronicled the history of our efforts to eliminate the accused's rule and acknowledged that after expressly rejecting the rule in *Buchanan* and *Morley*, we had allowed it to reenter our jurisprudence. We then, once again, rejected the accused's rule and expressly overruled those cases which had applied the rule in one form or another. We explained:

> "'Courts following the [accused's] rule exhibit a noticeable tendency to divide the evidence into separate lines of proof, and analyze and test each line of proof independently of others rather than considering the evidence as an interrelated whole. The sufficiency of the evidence is often tested against theoretical and speculative possibilities not fairly raised by the record, and inferences are sometimes considered which, though entirely possible or even probable, are drawn from evidence which the jury may have disbelieved.'"[27]

We noted in *Pierce* that "a fact prove[d] by circumstantial evidence is nonetheless a proven fact,"[28] and we emphasized:

> Circumstantial evidence is not inherently less probative than direct evidence. . . . Whether evidence is circumstantial or direct, "a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference." . . . "If the jury is convinced beyond a reasonable doubt, we can require no more."[29]

---

[25] *Id.*

[26] *State v. Pierce, supra* note 16.

[27] *Id.* at 547, 537 N.W.2d at 330, quoting *State v. Buchanan, supra* note 19.

[28] *State v. Pierce, supra* note 16, 248 Neb. at 547, 537 N.W.2d at 330.

[29] *Id.* (citations omitted).

And finally, we reiterated in *Pierce* that the proper standard of review is the same whether we are reviewing a conviction based on direct or circumstantial evidence:

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same:

"In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction."[30]

In the present case, the Court of Appeals' analysis revived the accused's rule by requiring the State to disprove every hypothesis of nonguilt in order to convict Olbricht using circumstantial evidence. For all the reasons we articulated in *Buchanan*,[31] *Morley*,[32] and *Pierce*,[33] we again reject the suggestion that a different standard of review should be applied to circumstantial evidence in a criminal case.

Applying the correct standard of review and considering the material elements of the offense, we find the evidence was sufficient to support Olbricht's conviction for knowing and intentional child abuse resulting in serious bodily injury. Medical testimony supported a finding that A.M. was a battered child who had been injured in a multisystem manner

---

[30] *Id.* at 548, 537 N.W.2d at 330-31.

[31] *State v. Buchanan, supra* note 19.

[32] *State v. Morley, supra* note 22.

[33] *State v. Pierce, supra* note 16.

over time. Medical testimony indicated her injuries were intentional and not accidental. Evidence showed A.M.'s brain bleed and liver laceration were serious bodily injuries. The evidence also showed A.M. received a variety of suspicious prior injuries while in Olbricht's care, and her serious bodily injuries were inflicted during a timeframe when she was in Olbricht's care. The babysitter testified that when she asked A.M. who hurt her, A.M. said her "daddy" did. Since being removed from Olbricht's care, A.M. has not suffered bruising or other injuries. While Olbricht offered numerous explanations for A.M.'s various injuries, it can be presumed from the court's verdict that it did not find Olbricht's testimony in that regard credible.

Viewing this evidence in the light most favorable to the prosecution, we find it is sufficient to support the verdict. We therefore reverse the Court of Appeals' decision.

[8] Upon reversing a decision of the Court of Appeals, we may consider, as we deem appropriate, some or all of the assignments of error the Court of Appeals did not reach.[34] We thus proceed to consider Olbricht's remaining assignments of error.

## DIRECTED VERDICT

[9] Olbricht asserts the trial court erred in denying his motion for directed verdict at the close of the State's case. The record confirms that after the motion was denied, Olbricht proceeded to put on evidence. A defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution, and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge correctness in the trial court's

---

[34] *State v. Simnick*, 279 Neb. 499, 779 N.W.2d 335 (2010); *State v. Hausmann*, 277 Neb. 819, 765 N.W.2d 219 (2009).

overruling the motion for dismissal or a directed verdict but may still challenge the sufficiency of the evidence.[35]

By proceeding to introduce evidence after the motion for directed verdict was overruled, Olbricht waived the right to challenge the trial court's ruling on appeal.

### EVIDENTIARY OBJECTIONS

Olbricht's brief cites to six instances in the record where testimony was allowed, or exhibits were received, over his objections. He assigns these evidentiary rulings as error, but presents no argument as to how or why the court erred, or how he was prejudiced thereby.

[10] An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[36] This requirement is not designed to impede appellate review, but to facilitate it by preventing parties from shifting to appellate courts the critical tasks of searching the record for relevant facts, identifying possible error, and articulating a legal rationale that supports the assigned error.[37] Olbricht's assignment of error regarding the district court's evidentiary rulings is not properly presented for appellate review, and we do not address it further.

### MOTION FOR NEW TRIAL

[11] Olbricht asserts the district court erred in refusing to grant his motion for new trial. In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed.[38]

---

[35] *State v. Graff*, 282 Neb. 746, 810 N.W.2d 140 (2011).

[36] *State v. Cook*, 290 Neb. 381, 860 N.W.2d 408 (2015); *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

[37] *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016).

[38] *State v. Parnell, ante* p. 551, 883 N.W.2d 652 (2016).

Our record on appeal does not contain Olbricht's motion for new trial, so we are unable to determine whether it was timely filed or on what grounds a new trial was requested. It is incumbent upon the defendant who appeals his or her conviction to present a record which supports the errors assigned; absent such a record, as a general rule, the decision of the lower court as to those errors will be affirmed.[39]

## EXCESSIVE SENTENCE

Olbricht claims his indeterminate prison sentence of 18 to 30 years is excessive. Before considering this assignment of error, we pause to address a sentencing issue raised by the State.

During the sentencing hearing, the court announced a sentence of incarceration for a term "of not less than 15 years, not more than 30 years." The subsequently filed written order, however, reflects a sentence of imprisonment "for a period of not less than 18 yrs, nor more than 30 yrs."

[12] We have held that when a sentence orally pronounced at the sentencing hearing differs from a later written sentence, the former prevails.[40] Thus, on this record, the law requires that the minimum term of Olbricht's prison sentence be modified to reflect the district court's oral pronouncement of 15 years.

[13-15] Olbricht was convicted of a Class II felony.[41] A sentence of 15 to 30 years' imprisonment is within the statutory limits for such a conviction.[42] Imposing a sentence within statutory limits is a matter entrusted to the discretion of the trial court.[43] Where a sentence imposed within the statutory

---

[39] *State v. Abbink*, 260 Neb. 211, 616 N.W.2d 8 (2000).

[40] *State v. Sims*, 277 Neb. 192, 761 N.W.2d 527 (2009).

[41] See § 28-707(7).

[42] See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014).

[43] See *State v. Burton*, 282 Neb. 135, 802 N.W.2d 127 (2011).

limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.[44] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[45]

[16] With regard to the relevant factors that must be considered and applied, we have stated that when imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.[46]

Here, the presentence investigation report indicated Olbricht was 25 years of age at the time of sentencing. He had completed the ninth grade and was unemployed. His criminal history included juvenile delinquency adjudications and an unsatisfactory release from juvenile probation. As an adult, Olbricht had been convicted of several misdemeanors, including third degree domestic assault and third degree assault. He had another unrelated felony charge pending in district court at the time of sentencing, and the presentence investigation report scored him as a "'Very High'" risk to reoffend.

The district court indicated it had read and considered the information contained in the presentence investigation report, had considered all the evidence adduced at trial, and had considered the relevant sentencing criteria. The court emphasized

---

[44] *State v. Carpenter*, 293 Neb. 860, 880 N.W.2d 630 (2016); *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

[45] *State v. Bauldwin*, 283 Neb. 678, 811 N.W.2d 267 (2012).

[46] *State v. Carpenter, supra* note 44.

the serious nature of the crime and the serious and lasting nature of the injuries inflicted on A.M., and it concluded this was not an appropriate case for a sentence of probation.

We find no abuse of discretion in Olbricht's sentence of 15 to 30 years' imprisonment.

CONCLUSION

For the foregoing reasons, we find the evidence was sufficient to sustain the conviction, and we reverse the Court of Appeals' decision. We find no merit to Olbricht's remaining assignments of error. The matter is remanded with directions to affirm Olbricht's conviction and modify his sentence to reflect the district court's oral pronouncement of a term of incarceration of 15 to 30 years.

Reversed and remanded with directions.